**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**YAN SIMAS FERREIRA**, individually, and
**MARIO VITIGLIANO**, individually

Case No. _____

                                   **Plaintiffs,**

**v.**

**COUNTY OF SUFFOLK, COUNTRY OF**
**SUFFOLK POLICE DEPARTMENT, SUFFOLK**
**COUNTY POLICE OFFICERS JOHN DOES #1-#6,**
**in their individual and official capacities, and**
**SUFFOLK COUNTY POLICE OFFICER**
**JANE DOES #1-#2 in her individual and official**
**capacities,**

                                   **Defendants.**
_____

## COMPLAINT

Plaintiffs, YAN SIMAS FERREIRA (hereinafter "Ferreira" or "Plaintiff Ferreira") and

MARIO VITIGLIANO (hereinafter "Vitigliano" or "Plaintiff Vitigliano") (collectively referred to

hereinafter as "Plaintiffs"), by and through the undersigned counsel, and in accordance with the

Constitution of the United States, the Federal Rules of Civil Procedure, the New York

Consolidated Laws, and all other applicable statutes, rules, governing legal authorities, and

advisory opinions, hereby file the instant civil rights Complaint. In support thereof, Plaintiffs state

as follows:

## I.   PRELIMINARY STATEMENT

1.   Plaintiffs' claims arise out of an unlawful pursuit and subsequent stop of their

vehicle on the night of January 17, 2019, which unlawful seizure continued through the morning

of January 18, 2019.  Police officers of the Suffolk County Police Department (hereinafter

"SCPD"), while acting under color of state law, did intentionally and willfully imperil Plaintiffs

by engaging tin unconscionable and racially discriminatory police tactics subjecting Plaintiffs to unjustifiable assaults and battery, while falsely imprisoning them, and conducting unlawful searches of their persons and their vehicle during their detainment. The SCPD officers, the SCPD and SC then later conspired to prevent Plaintiffs from reporting and the SCPD from accurately investigating the constitutionally violative misconduct.

2.      This action by brought by Plaintiffs pursuant to 42 U.S.C. §1983 for deprivation of Plaintiffs' civil rights in violation of the Fourth (4th) Amendment guaranteeing their right to be free from unlawful search and seizure and the use of excessive force by public officials, and in violation of the Fourteenth (14th) Amendment guaranteeing Plaintiffs equal protection under the law. Claims are brought against officers of the SCPD in both their individual and official capacities, for employing tactics of excessive force, racial profiling, racially-based police brutality, and racial discrimination, and for conducting unlawful searches and seizures while falsely imprisoning Plaintiffs. Under the theory of supervisory liability and municipal liability claims are also brought against the Internal Affairs division (hereinafter "IAD") of the SCPD, and against SCPD and the County of Suffolk (hereinafter "SC") under the theory of municipal liability.

3.      Plaintiffs also seek relief for violations of multiple provisions of the New York Consolidated Laws against SCPD officers JOHN DOES #1-6 and SCPD officers JANE DOES #1-#2 for civil tort violations including assault, battery, negligent infliction of emotional distress, and false imprisonment, and against the SCPD and SC for negligent retention, training and supervision under the theory of and *respondeat superior*.

4.      The relief sought by Plaintiffs includes monetary damages (special, compensatory, and punitive) against all Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## II.   JURISDICTION AND VENUE

5.      This action is brought pursuant to :28 USC §1331, 42 USC §1983, the Fourth and Fourteenth Amendments to the United States Constitution and the New York Consolidated Laws pursuant to 28 U.S.C. §1367.

6.      The amount in controversy exceeds seventy-five thousand dollars ($75,000) excluding interest and costs.

7.      Venue is proper in the Eastern District of New York as the events giving rise to Plaintiffs' claims all occurred in Suffolk County, New York, which falls within the jurisdiction of this tribunal, and at all relevant times material hereto Defendant SCPD officers were all acting under color of state law within the boundaries of the Eastern District of New York.

## III.   NOTICE OF CLAIM

8.      In accordance with The New York Consolidated Laws, General Municipal Law (hereinafter "GML") § 50-e, Plaintiffs timely filed a proper, written Notice of Claim within the ninety (90) day statutory period. More than thirty (30) days have elapsed since the filing of that notice, and this matter has not been settled or otherwise resolved.

9.      Plaintiffs Vitigliano and Ferreira have also provided deposition testimony and otherwise complied with the obligations set forth in GML §50-h.

## IV.   PARTIES

10.     Plaintiff Ferreira is a citizen of the United States and at all times material hereto had been residing in Suffolk County, New York. Ferreira is dark skinned, of Brazilian descent **and** qualifies as a racial minority and as a member of a "protected class" for purposes of application of the Equal Protection guarantees provided by the Fourteenth Amendment.

11.    Plaintiff Vitigliano is a citizen of the United States and at all times material hereto had been residing in Suffolk County, New York. Vitigliano is a mix of Latin and Italian dissent qualifying as a racial minority and as a member of a "protected class" for purposes of application of the Equal Protection guarantees provided by the Fourteenth Amendment.

12.    SC is a municipal corporation organized and duly existing under the laws of the state of New York. At all times material hereto, SC showed a deliberate indifference to the racially motivated police misconduct occurring within the SCPD, and intentionally failed to supervise the SCPD despite knowing of the common practice of racially motivated police brutality, racial profiling and racial discrimination. Moreover, through the actions of its governing officials, SC has condoned the practices and policies of racially motivated misconduct, the selective enforcement of criminal laws, including the concealment of unlawful police tactics, the intimidation of potential witnesses, the discouragement of complaints against the SCPD and its' officers, and even assisted in obstructing justice by intimidating witnesses and destruction or fabricating evidence that would establishing wrongdoing by the SCPD , SCPD officers and SCPD high-ranking managerial officials.

13.    The SCPD is a municipal corporation organized under the laws of the state of New York. At all times material hereto the SCPD failed in its duty to properly train, supervise and reprimand SCPD law enforcement officers, negligently retained law enforcement personnel despite having evidence and knowledge of their officers knowing violations of citizens' federally protected civil rights, including equal protection for minority citizens against unlawful searches and seizures, racial profiling by SCPD officers, the racially motivated use of excessive force against minorities, and the selective enforcement of criminal laws based on discriminatory tactics and commonly accepted customs, policies and practices.

14.     Suffolk County Police Officer (hereinafter "SCPO") JOHN DOE #1, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #1 is being sued in both his individual and official capacities. At all relevant times, SCPO JOHN DOE #1 had **not** been wearing a SCPD uniform and he had been traveling in an unmarked vehicle.  The distinguishing factor of SCPD JOHN DOE #1 from the other non-uniformed officer for identification purposes is that SCPD JOHN DOE #1 was bald and more heavy set.

15.     SCPO JOHN DOE #2, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #2 is being sued in both his individual and official capacities. At all relevant times, SCPO JOHN DOE #2 had **not** been wearing a SCPD uniform and had been traveling in an unmarked vehicle. SCPO JOHN DOE #2 wore glasses, he was a white male, and he had dark hair.

16.     SCPO JOHN DOE #3, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #3 is being sued in both his individual and official capacities. SCPO JOHN DOE #3 wore an official SCPD uniform and had been traveling in an official police vehicle.

17.     SCPO JOHN DOE #4, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #4 is

being sued in both his individual and official capacities. SCPO JOHN DOE #4 wore an official SCPD uniform and had been traveling in an official police vehicle.

18.     SCPO JOHN DOE #5, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #5 is being sued in both his individual and official capacities. SCPO JOHN DOE #5 wore an official SCPD uniform and had been traveling in an official police vehicle.

19.     SCPO JOHN DOE #6, at all times material hereto, while acting under color of state law in his capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JOHN DOE #6 is being sued in both his individual and official capacities. SCPO JOHN DOE #6 wore an official SCPD uniform, had been the on-duty desk officer at the time Plaintiffs and their family went to the SCPD to file a complaint about the police misconduct at issue in the case at bar.

20.     SCPO JANE DOE #1, at all times material hereto, while acting under color of state law in her capacity as a SCPO employed by the SCPD did subject Plaintiffs to violations of their federally protected constitutional rights and act in violation of state laws. SCPO JANE DOE #1 is being sued in both her individual and official capacities. SCPO JANE DOE #1 wore an official SCPD uniform and had been traveling in an official police vehicle.

21.     SCPO JANE DOE #2, at all times material hereto, while acting under color of state law in her capacity as an SCPO working within the SC IAD did violate Plaintiffs' federally protected constitutional rights by intentionally failing to properly and fully investigate Plaintiffs' civil rights allegations and the complaints against SCPO JOHN DOES #1-5 and SCPO JANE DOE #1. SCPO JANE DOE #2 also failed to properly report civil rights violations by SCPO JOHN

DOES #1-5 and SCPO JANE DOE #1 to supervisory personnel at the SCPD. SCPD JANE DOE #2 is being sued in her official capacity and in her individual capacity.

## V.      SUMMARY OF CLAIMS

21.     Plaintiffs Ferreira and Vitigliano are the victims of racial profiling and racial discrimination by SCPD officers. They are the victims of selective enforcement practices by a corrupt law enforcement system perpetuated by the SCPD's failure to properly train and supervise personnel and its knowing retention of police officers engaging in constitutionally violative practices. They are the victims of a municipal county government that has been and continues to support known and accepted practices of minority discrimination and police brutality with a deliberate indifference to their actions and of the actions of those they are vested with supervising and controlling.

22.     Plaintiffs are the victims of intolerable and objectively unconscionable treatment by SCPD officers who have committed numerous civil rights violations as a direct result of a morally defective municipal government and a police department that has failed in its job of protecting citizens from harm --- instead subjecting them to a wrath of corruption and police brutality that is so commonplace within SC and the SCPD and the common practice of SCPOs.

23.     The intentional delay by the IA department of the SCPD in investigating Plaintiffs' claims of racially motivated police brutality, civil rights violations and selective enforcement practices by the SCPD and its officers is the accepted practice intended to shield SCPO wrongdoers from responsibility and accountability, including the actions of JOHN DOES # 1-5 and JANE DOE #1.

24.     In spite of an agreement between the federal government and the local governing municipal bodies, the SCPD, the pattern and practice of racially motivated discrimination,

selective enforcement and intentional violations of minority civil rights knowingly continues within and is condoned by SC and the SCPD.

## VI.    FACTUAL BACKGROUND

25.    On the evening of January 17, 2019 Plaintiffs and their friend Angel Rivera[1] had been at Plaintiff Ferreira's house playing video games.

26.    At all times relevant hereto, Plaintiffs are college students, whose parents reside in Suffolk County, New York, and neither Ferreira or Vitigliano has ever had any criminal trouble or record or been charged with any criminal misconduct.

27.    Just prior to midnight on January 17, 2019, the three boys left Plaintiff Ferreira's home in Ferreira's vehicle to drive Plaintiff Vitigliano to his house so he was not late for his midnight curfew. It was at the that time that the events occurred giving rise to this civil rights complaint. As a result of Plaintiffs being falsely imprisoned the police misconduct occurred through them morning of January 18, 2019.

### A.    Violations of the Equal Protection Clause: Racial Profiling and Discrimination

28.    Plaintiffs had not committed any crime(s) or moving violations justifying the pursuit of plaintiff Ferreira's car by SCPD JOHN DOES #1 & #2, who were in an unknown and unmarked vehicle.

29.    There is no objective, nonracially motivated basis for SCPOs JOHN DOES #1 & #2 to have followed Plaintiff Ferreira's vehicle. Nevertheless, SCPOs JOHN DOES #1 & #2 began following and later pursuing Plaintiff Ferreira's vehicle.

---

[1] Angel Rivera has also brought a civil rights action relating to the conduct occurring on the evening of January 17 and continuing through the following morning. *See* 19-cv-_____. Therefore, the instant Complaint does not detail the allegations relating to Angel Rivera absent a direct connection to Plaintiffs' related claims.

30.     The sole motivating factor in SCPO JOHN DOES #1 & #2 pursuit of Plaintiff Ferreira's vehicle had been discriminatory purpose based on Plaintiffs Ferreira's and Vitigliano's race and minority status – better known as racial profiling.

31.     There is also no objective, nondiscriminatory basis justifying the eventual stop of Plaintiffs' vehicle by SCPO JOHN DOES #1 & #2 or subsequent detention of Plaintiffs and Ferreira's vehicle by SCPO JOHN DOES #1-5 and SCPO JANE DOE #1.

32.     There simply was no cause for any "traffic stop" and detention of Plaintiffs let alone "probable cause" or even an objective basis for an investigatory stop of the car.

33.     In fact, no traffic citations were ever issued by SCPO JOHN DOES #1-#5 and SCPO JANE DOE #1 following the unlawful pursuit by SCPO JOHN DOES #1 & #2 and the stop and detention of Plaintiffs by SCPO JOHN DOES #1-#5 and JANE DOE #1.

34.     At the time SCPO JOHN DOES #1 & #2 began following Plaintiffs in an unmarked vehicle there was no indication that the undercover car was being operated by law enforcement personnel. In fact, it was not until SCPO JOHN DOES #1 & #2 came charging at Ferreira's vehicle with guns drawn while screaming and cursing at Plaintiffs did Plaintiffs become aware that the unknown vehicle was actually an undercover police car.

### a.      The 911 Call by Plaintiffs for Help

35.     Plaintiffs first noticed and became concerned about the unknown vehicle just as Plaintiffs were arriving down the street from Plaintiff Vitigliano's home.

36.     The unmarked car flashed a light into Plaintiffs' car. Plaintiffs took notice and became concerned.

37.     The unknown vehicle then turned around to follow Plaintiffs' vehicle as soon as it passed by the unmarked car and pulled into Plaintiff Vitigliano's driveway at Vitigliano's home.

38.    All objective facts – the car being unmarked, a flashlight being shown into Plaintiffs' car, the unknown vehicle clearly and deliberately turning around to follow them – supported the possibility that the kids were being pursued by criminals who were up to no good deeds.

39.    Plaintiffs then became so concerned that the unknown vehicle following them contained criminal wrongdoers that Ferreira suggested and Vitigliano agreed that it was not a good idea for Vitigliano to head into his home at that time. Ferreira instead pulled out of Vitigliano's driveway because the boys were concerned about something bad happening to them if they stopped and exited the vehicle at Vitigliano's home.

40.    Plaintiffs kept driving because they were scared and uncertain about what they should next. They discussed calling the police for

41.    Plaintiff Ferreira had not committed any traffic infractions nor had any of the vehicle occupants exhibited any behavior that could be construed as providing the then unknown undercover police with an objective basis to assume any wrongdoing by the boys.

42.    Plaintiffs never conceived that the unknown vehicle could be the police. Plaintiffs were discussing calling the police because they were in fear for their safety and did not then know it had been the police they were in fear of.

43.    The unknown vehicle continued following Plaintiffs for several miles and down numerous streets.

44.    Plaintiffs became increasingly concerned about their physical well-being and safety. Plaintiffs believed, quite reasonably under the circumstances, they were in serious danger of harm by the unknown vehicle's occupants.

45.    Plaintiff Vitigliano called 911. He explained the situation and Vitigliano asked the 911 operator for help and guidance because they were being followed by the unknown car.

46.    Plaintiffs were, based upon the  facts and circumstances then attendant, reasonably in fear for their lives and safety, and never had any reason even to consider or discuss the possibility that it could be police officers pursuing them, especially as the unmarked car following plaintiffs failed to identify the officers as such whether by turning on sirens, flashing lights, or by issuing verbal commands over a loud speaker system or functional equivalent thereof.

47.    While on the phone with the 911 dispatcher the unknown vehicle turned on little red lights that appeared to be coming from the car visors. Plaintiffs told the 911 operator "we don't think they're police."

48.    Plaintiffs stayed on the phone with the 911 dispatcher, who was asking for updates on the plaintiffs' location as they were driving. Vitigliano provided the dispatcher with real-time information on their location as they continued driving.

49.    Suddenly, out of nowhere, a marked police SUV pulled in front of Plaintiff Ferreira's car and Plaintiffs immediately stopped their vehicle. At that point Plaintiff Vitigliano informed the 911 operator that "the police are here."

## B.    Fourth Amendment Violations: Unlawful Search and Seizure followed by Racially Motivated Use of Excessive Force

50.    When Ferreira stopped the car the SCPOs already had their guns out. The six officers then stormed Ferreira's vehicle – all with guns drawn and pointed at the boys as they approached Ferreira's car.

51.    The two undercover officers, SCPO JOHN DOES #1 & #2, came running on the driver's side, Ferreira's side of the vehicle. The officers were screaming and cursing at Plaintiffs

as they continued pointing their guns at the boys.  SCPO JOHN DOES #1 & #2 then came to the car and started banging on Ferreira's driver side window.

52.     Vitigliano then dropped his telephone but did not hang it up or disconnect the 911 dispatcher.

### a.     Police Brutality & Excessive Force Based On Vitigliano's Minority Status

53.     Two of the four uniformed officers, SCPO JOHN DOE #3 & SCPO JANE DOE #1 were approaching Plaintiffs from the front of the vehicle while Plaintiffs were still in the car screaming "get out of the car… put your hands up."

54.     SCPO JOHN DOE #3 came to Vitigliano's side of vehicle, pulled Plaintiff Vitigliano out of the car and onto the side of the road. He threw Vitigliano with violent force onto a large pile of ice on which Vitigliano hit his head.

55.     SCPO JOHN DOE #3 then pulled Vitigliano by the handcuffs off the ice mound and threw him to the ground with unreasonable force, again.

56.     SCPO JOHN DOE #3, without any just cause of reason, proceeded to handcuff Vitigliano and put him over the passenger seat's back door of the unmarked car. Vitigliano hit his head on the roof of the unmarked vehicle as a result of the aggressive, forceful and objectively unjustifiable physical contact by SCPO JOHN DOE #3.

57.      Without any probable cause, while Vitigliano was handcuffed, SCPO JOHN DOE #3 proceeded to search Vitigliano. No weapons or contraband were found on Vitigliano.

58.     Vitigliano also overheard SCPO JOHN DOES #1-5 and JANE DOE #1 laughing, making cruel jokes and comments such as "I got to use my gun today" or "I got to take my gun out" following the incident.

**b.      Police Brutality & Excessive Force Based On Ferreira's Minority Status**

59.      The two undercover officers, SCPO JOHN DOES #1 & #2 rushed at the driver side. SCPO JOHN DOES #2 began banging on Ferreira's window demanding that he open the door.

60.      As soon as Ferreira opened his car door, while he was still sitting in the driver's seat, SCPO JOHN DOE #2 threw a punch at his face – without any rational basis and without any threat by or provocation from Ferreira. SCPO JOHN DOE #2 hit Ferreira with his right hand on the right side of Ferreira's face near his cheek in the area of his jaw. Then SCPO JOHN DOE #2 grabbed Ferreira by his jacket and yanked him out of the vehicle throwing him onto the car.

61.      SCPO JOHN DOE #2 began cursing at Ferreira while shaking him and calling him a "nigger." Plaintiff Ferreira was then handcuffed and searched by SCPO JOHN DOE #2 while pinning Ferreira down on the hood of Ferreira's car.

62.      Following the search SCPO JOHN DOE #2 dragged Ferreira over to the undercover vehicle and put him inside the car in the back seat. Both SCPO JOHN DOES #1 & #2 came to the undercover car after putting Ferreira, while in handcuffs, in the back seat.

63.      The SCPD officers only began treating Plaintiffs and their friend with some form of civility **after** being informed by the 911 dispatcher that the boys had telephoned 911 for help because they were being chased by an unknown vehicle.

**c.      Unjustified Photographing of Plaintiffs' Identifications & Conversion of Plaintiffs' Personal Property**

64.      The SCPD officers removed the handcuffs from Ferreira and Vitigliano. SCPO JOHN DOE #2 then demanded that Plaintiffs show their ID's. SCPO JOHN DOE #2 took pictures of the Plaintiffs' identifications on his cellular telephone.

65.     However, while Ferreira was in handcuffs in the back seat of the undercover car he saw SCPO JOHN DOE #2 go into his vehicle, search through his car and put Ferreira's telephone into his back pocket.

66.     Ferreira asked SCPO JOHN DOE #2 to give him back him phone. Although SCPO JOHN DOE #2 initially denied taking Ferreira's telephone from his vehicle, once Ferreira informed SCPO JOHN DOE #2 that he saw him take it, SCPO JOHN DOE #2 gave it back to Ferreira.

67.     Similarly, following the unlawful search of Vitigliano, Vitigliano realized he was missing a $50 bill. When Vitigliano asked SCPO JOHN DOE #3 about the missing money SCPO denied having knowledge of the missing money. Yet, JOHN DOE NO #1 suddenly pulled the $50 bill from somewhere and gave it back to Vitigliano.

68.     As SCPO JOHN DOE #1 walked by Vitigliano he referred to Plaintiffs as "fucking niggers."

69.     SCPO JOHN DOES #1-#5 and SCPD JANE DOE #1 concluded the constitutionally violative seizure and false imprisonment by informing stating: We could have hit you with a thousand f*****g tickets, but we're being nice." No criminal charges were filed by defendants against plaintiffs, further demonstrating that the aforealleged stop, search and seizure were without just and probable cause and without any legal justification.

> **d.      Plaintiffs' Medical Treatment & Psychological Counseling Resulting from SCPD's Brutality, Excessive Force and Racial Discrimination**

70.     When Vitigliano finally got home in the early morning hours following the police encounter he sat up in bed for awhile troubled by the events that had transpired.

71.     Vitigliano went to his local Urgent Care a few days later as he was still suffering headaches from the bump on his head that happened when he was thrown onto the ice pile by SCPO JOHN DOE #3.

72.     Ferreira was even more traumatized by incident. He also went to the local Urgent Care a few days later as he was still suffering pain in his ribs from the excessive force leveled on him by SCPO JOHN DOE #1.

73.     As a result of the officers' misconduct and excessive force Ferreira is scared to remain in Suffolk County with his family. He will be relocating the Florida where he will be continuing his education at South Florida college.

74.     Since the night of these events Ferreira has been under psychological care as a resilt of the emotional trauma and negative memories of being beaten up by the those who are charged with his protection.

### C.     Equal Protection Violations Resulting From Selective Enforcement Policies

75.     SCPO JOHN DOES #1 & #2 motive for following and subsequently detaining Plaintiffs is evidenced by the racial slurs Plaintiffs were subjected to. JOHN DOE #1 had refereed to Ferreira and Vitaliano as "these f*****g niggers" uttering additional racially based comments during plaintiffs'' unlawful detention.

76.     Evidence of SCPO JOHN DOES #3, #4 & #5 and SCPO JANE DOE #1 racially motivated selective enforcement practices based is their conduct during the unlawful searches and seizure of Plaintiffs and their vehicle. Plaintiffs Ferreira Vitigliano and their friend were falsely imprisoned by SCPO JOHN DOES #1-#5 and JANE DOE #1 based solely on their minority status as there is no reasonable or objective basis justifying the officers constitutionally violative misconduct and Plaintiffs unlawful detention,

77.     Selective enforcement practices are commonly accepted practices among SCPD officers and by Suffolk County governmental officials in positions of power and authority.

### D.     Basis for Municipal or *Monell* Liability Against SCPD & SC

78.     SC and the SCPD became so well-known for their racially discriminatory and abusive policies and procedures that "[i]n January 2014, the United States Department of Justice ("DOJ") and the Suffolk County Police Department ("SCPD" or the "Department") entered into a Settlement Agreement ("Settlement Agreement" or "Agreement") to ensure that police services are provided to all members of the Suffolk County community, including the Latino community, in a manner that complies with the Constitution and laws of the United States." *Sixth Report Assessing Settlement Agreement Compliance by Suffolk County Police Department* (dated March 13, 2018), at 2.

79.     Since the parties' Agreement SC and the SCPD have been the subject of numerous criminal investigations and indictments at all governmental levels by those in the highest positions of both government and law enforcement.

### a.     SCPD Police Chief: James Burke Convicted of Violating Civil Liberties & Obstructing Justice

80.     "James Burke, the Suffolk County Police Department's former top uniformed officer, was indicted in December 2015 and charged by federal prosecutors with orchestrating an elaborate scheme to conceal his … beat[ing] [of] a handcuffed prisoner … Burke pleaded guilty in February 2016 to conspiracy to commit obstruction of justice and violating the victim's civil rights and was sentenced in November 2016 to 46 months in prison. Burke was released from prison to a halfway house in November 2018.: *The Politics of Corruption on Long Island: Criminal cases against 10 politicians and public officials*, Newsday (Last updated: March 22, 2019), https://projects.newsday.com/long-island/politics-corruption-james-burke/.

16

**b.      SC District Attorney & Chief Aide Indicted for Witness Tampering, Obstructing Justice and as Accessory to Violating Citizens' Civil Rights**

81.      "Thomas Spota, the Suffolk County district attorney, was indicted in October 2017 on federal charges that he was involved in a cover-up of ex-Suffolk Police Chief James Burke's 2012 assault of a suspect. U.S. attorneys say Spota, along with longtime aide Christopher McPartland, intimidated and pressured witnesses not to cooperate with federal investigators in order to protect Burke." *The Politics of Corruption on Long Island: Criminal cases against 10 politicians and public officials*, Newsday (Last updated: March 22, 2019), https://projects.newsday.com/long-island/politics-corruption-james-burke/politics-corruption-long-island/, at The District Attorney. The cover-up is a prime example of Suffolk County government's negligent retention of wrongdoers and encouragement and protection of criminal wrongdoing against members of the public – such as Plaintiffs Ferreira and Vitigliano.

82.      The criminal charges against the former Suffolk County District Attorney include

    (a)      conspiracy to tamper with witnesses;

    (b)      conspiracy to obstruct an official proceeding;

    (c)      witness tampering;

    (d)      obstruction of an official proceeding;

    (e)      obstruction of justice;

    (f)      accessory after the fact to the deprivation of John Doe's civil rights.

*Id.*

83.      Thomas Spota has resigned from his position as the Suffolk County District Attorney. *Id. See also* Andrew Smith, *Court Papers Detail Alleged Efforts By Spota, McPartland to Thwart Federal Burke Probe*, Newsday (last updated Dec. 26, 2018) (setting forth particular allegations of misconduct in attempt to cover-up police brutality and wrongdoing by Suffolk

County Police Chief Burke), https://www.newsday.com/long-island/crime/spota-mcpartland-suffolk-burke-1.24819883.

84.     "Christopher McPartland, one of Suffolk County District Attorney Thomas Spota's chief aides, who ran the office's political corruption unit, was indicted along with Spota in October 2017 on federal charges related to allegations the two were involved in a cover-up of ex-Suffolk Police Chief James Burke's assault of a suspect." *The Politics of Corruption on Long Island: Criminal cases against 10 politicians and public officials*, Newsday (Last updated: March 22, 2019), https://projects.newsday.com/long-island/politics-corruption-james-burke/politics-corruption-long-island/, at The District Attorney's Aide.

85.     The criminal charges against McPartland include

    (a)     conspiracy to tamper with witnesses;

    (b)     conspiracy to obstruct an official proceeding;

    (c)     witness tampering;

    (d)     obstruction of an official proceeding;

    (e)     obstruction of justice;

    (f)     accessory after the fact to the deprivation of John Doe's civil rights

*Id.*

86.     McPartland's attitude and blatant disregard for citizens' civil rights and the law demonstrate the atmosphere of rampant corruption in the Suffolk County government to protect police officers and supervisory government officials despite unequivocal proof of the deprivation of the individuals' civil rights they are charged with protecting. *See* Robert E. Kessler, *Spota, McPartland Plotted To Obstruct Justice In Burke Case, Newly Filed Prosecution Papers Say* (updated Dec. 6, 2018).

c.     **SC's Pattern and Common Practices of Impeding Investigations into Civil Rights' Violations**

87.     The actions of McPartland and Spota establish a pattern of dissemination of misinformation and a practice of lying to protect against the public learning the truth about their abusive misconduct. Their actions are direct proof of the intentional retention and lack of proper training and supervision of members of the Suffolk County Police Department and government.

88.     During the investigation into claims of brutality and excessive force by Burke, McPartland intentionally impeded efforts by honest law enforcement officers: "he thought a particular police officer was a 'rat' and he ordered CD1 to 'get his guys in order' and to 'take his guys' temperature and confront them one-on-one about whether they were a 'rat'…". *Id.* Certainly not a dictate that is conducive to the proper training and supervision of Suffolk County's police department or its officers.

89.     The policy and practice of condoning police brutality and government officials attempts to cover-up instances of Suffolk County law enforcement having violated individuals' constitutional and civil rights is best seen by Spota's and McPartland's orders "as part of the cover-up, [of] requir[ing] police witnesses to obtain lawyers through the Suffolk County Police Benevolent Association and the Suffolk County Detectives Association and to get legal representation from a list of attorneys approved by Burke's lawyer." *Id.*

90.     Proof that the accepted pattern of practice and procedure is avoidance of accountability for wrongdoing within the police department and county government environment is best shown by the evidence establishing that Spota and McPartland "arranged 'for high-ranking members of the SCPD and union officials to interact with potential witnesses … to gather further information and control the flow of information." *Id.*

91.     There is no interest in the truth or justice within the highest ranks of Suffolk County government. Not surprisingly, the lack of ethics and morals coupled with comply accepted and often encouraged municipal governmental policies of punishing those seeking to unleash the truth against wrongdoers and instead reprimand those who do right and coerce those who will not follow into doing wrong has trickled down to those inferior of their superiors.

### d.     Federal Government Efforts to Curb SCPD's Unlawful & Discriminatory Practices Causes Little If Any Change

92.     In spite of the federal government's best efforts to ensure SC and the SCPD ceases its long-time practices of employing racially discriminative law enforcement tactics and brutal enforcement tactics, SC and the SCPD have not and still are not complying with the federal agreement. *See Sixth Report Assessing Settlement Agreement Compliance by Suffolk County Police Department* (dated March 13, 2018), at 2.

93.     The SCPD still practices the teachings, policies and procedures taught and adopted by one of the most corrupt police chiefs ever to hold the position in SCPD.

94.      Notwithstanding the federal mandate that SC and the SCPD implement and enforce policies designed to ensure equal protection under the law, the policies have been either improperly implemented, erroneously taught to SCPD officers or have failed to be enforced by SC officials or the SCPD.

95.     The most recent DOJ report of SC's compliance with the agreement begins by noting " that under the Agreement, SCPD is to provide DOJ with a self-assessment compliance report indicating its own views as to whether the county has reached compliance with the Agreement. Agreement ¶ IX(c)(ii) at 20. **The Department did not provide us with a self-assessment report** for this assessment period. We would like to impress upon the Department the importance of conducting self-assessments of its progress with the Agreement. First, SCPD's self-

assessments provide us with the necessary information to conduct fully informed assessments. Second, the Department benefits from auditing its own progress with the Agreement and identifying areas of concern. *See id.* at 3 (emphasis added).

96.     The report goes on the state "[The DOJ] would like to impress upon the [Suffolk County Police] Department the importance of conducting self-assessments of its progress with the Agreement. First, SCPD's self-assessments provide us with the necessary information to conduct fully informed assessments. Second, the Department benefits from auditing its own progress with the Agreement and identifying areas of concern. *Id.*

97.     The report goes on to expressly recognize that "significant work remains" in the following areas:

(a)     investigation of police misconduct;

(b)      undue delays by SCPD IAD in the timely adjudication of investigations;

(c)     continued delivery of bias-free policing noting that "bias-free training for all officers and recruits is … necessary to train them to better identify implicit biases and incorporate principals of procedural justice…";

(d)     tracking and reporting of hate crimes and hate incidents;

(e)     biased policing investigations "did not contain a finding of the allegation of biased policing" impeding the identification of trends of police misconduct;

(f)     maintain[ing] policies and procedures … that provide clear direction to ensure that officers and civilian employees enforce the law effectively, ethically, and constitutionality;

*Id.* at 3-6, 8, 15-18.

98.     The lack of sensitivity, concern, and corrective action to deter the rampant claims by SC citizens of police brutality, racial discrimination and unjustifiable misconduct  by the SCPD officers is best shown by SC's  recent decision **not** to equip all SCPD officers with body cams but rather equip only the highway patrol units with body cameras.

E.      **CLAIMS**

**FIRST CAUSE OF ACTION: VIOLATIONS OF 42 USC § 1983**

99.     The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

100.    Defendants SCPOs JOHN DOES #1 - #6 and SCPOs JANE DOES #1 - #2 have deprived Plaintiff of their civil, constitutional and statutory rights while acting under color of law.

101.    Defendants SCPOs JOHN DOES #1 - #5's and SCPO JANE DOE #1's misconduct has violated Plaintiffs' Fourth Amendment Right to be free of unlawful searches and seizures, the use of excessive force, and from being falsely imprisoned without probable cause.

102.    Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 further deprived Plaintiffs of their right to Equal Protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution by engaging in practices of racial profiling, racial discrimination, selective enforcement based on minority status and falsely imprisoning Plaintiffs without any objective basis other than Defendants' racial bias.

103.    Defendants SCPOs JOHN DOES #1 - #6 and SCPOs JANE DOE #1- #2, in conjunction with the SCPD and SC have conspired to deprive Plaintiffs of their right to report police misconduct, to receive the benefit of a full and fair investigation into Plaintiffs' allegations of SCPO's civil rights' violations and their allegations of the SCPD officers' unlawful misconduct, and have otherwise deterred Plaintiffs from reporting the SCPO's criminal activity in violation of

Plaintiffs' Right to Due Process guaranteed by the Fourteenth Amendment to the United States Constitution.

104.    SCPO JOHN DOE #6 expressly discouraged Plaintiffs and their family from reporting the misconduct of SCPOs JOHN DOES #1 - #5 and SCPOs JANE DOE #1 by refusing to permit them to file a report and discouraging them from accurately reporting the extent of the misconduct by SCPOs JOHN DOES #1 - #5 and SCPOs JANE DOE #1.

105.    SCPO JANE DOE #2 failed to adequately document the facts relating to the policemisconduct by SCPOs JOHN DOES #1 - #5 and SCPOs JANE DOE #1, failed to fully, fairly and properly investigate Plaintiff's allegations of police brutality and racial profiling, and failed to ensure proper remedial action and punishment were effectuated to deter this type of police misconduct in the future.

106.    As a direct result of Defendants SCPOs JOHN DOES #1- #6's and SCPOs JANE DOE #1 - #2's, wrongful actions Plaintiffs have suffered damages in the form of physical harm, mental anguish and both monetarily and emotionally.

**SECOND CAUSE OF ACTION: MUNICIPAL AND SUPERVISORY LIABILITY**

107.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

108.    The SCPD and SC are liable for the damages suffered by plaintiff as the SCPD and SC have and still are condoning and encouraging the common practices, policies and procedures that result in racial discrimination, racial profiling, the use of excessive force, and the selective enforcement of criminal laws as well as sanctioning unlawful searches, seizures and acts of falsely imprisoning racial minorities.

109.    Defendants SCPD and SC are also responsible for the actions of their inferiors by failing to remedy the wrongs; they SCPD and SC have created implicit policies and accepted customs under which unconstitutional practices occur regularly and they have allowed such policies or customs to continue by being grossly negligent in training, supervising and managing subordinates.

110.    SC and the SCPD have had direct knowledge of constitutional violations and criminal wrongdoing by SCPOs yet have failed to comply with federal mandates and agreements implemented solely for the purpose of deterring misconduct and encouraging accountability and liability for wrongful actions of officers of the SCPD and the SCPD itself.\SC and the SCPD have continued to employ or have otherwise negligently and/or intentionally retained criminal wrongdoers.

111.    Both the SC and the SCPD have engaged in a pattern and practice of conspiring to intimidate witnesses and deter honest law enforcement officers and personnel from reporting constitutionally violative behavior by their co-workers and/or prevent the full and fair investigations into and corrective action for police misconduct and charges of police brutality.

112.    As set forth in detail herein, the SC's and SCPD's failures to protect citizens' constitutional rights has been rampant and widespread over a period of many years. The conduct forming the basis for Plaintiffs' complaint is not an isolated incident but rather the  commonly accepted and often encouraged form of behavior and "enforcement" of criminal laws.

113.    SC and the SCPD are liable for the damages suffered by Plaintiffs as a result of their failure to act, failure to take corrective, failure to enforce policies encouraging compliance with citizen's constitutional rights, failure to fully and fairly investigate claims of misconduct,

failure to properly train, supervise and manage personnel, and by retaining knowing, repeat violators of citizens federally protected Constitutional rights.

## THIRD CAUSE OF ACTION: CONSPIRACY

114.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

115.    Defendants SCPOs JOHN DOES #1 - #6 and SCPOs JANE DOE #1 - #2 in conjunction with the IAD and supervisory officials at the SCPD and SC government conspired to prohibit the proper reporting of and investigation into the constitutional violations suffered by Plaintiffs.

116.    On the night and morning of the constitutionally violative misconduct SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 did conspire to discourage Plaintiffs for reporting their wrongful acts. The officers claimed that they could have cited Plaintiffs with numerous violations and that they did not use excessive force and unreasonable tactics by pursuing Plaintiffs without just cause and by physically manhandling Plaintiffs without any threat or fear of harm to the officers.

117.    In the days following January 17, 2019, when Plaintiffs arrived at the SCPD to report the incident with their parents Plaintiffs were intentionally discouraged by  SCPO JOHN DOE #6 from providing a truthful and accurate report of the police misconduct by SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1.

118.    SCPO JOHN DOE #6, the duty officer at the SCPD precinct, attempted to coerce Plaintiffs and their parents into believing that the acts of physical violence were really just assault – not battery or the use of excessive force.

119.    Although Plaintiffs and their parents met with SCPD officers about their complaint no formal written complaint was taken by the SCPD due to the actions of SCPO JOHN DOE #6, who flatly refused to permit plaintiffs and or their families to file any complaint, nor were plaintiffs and their families offered anything but disdain and a lack of full cooperation in appearing to inform the SCPD of SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 misconduct.

120.    As a result of Defendants' conspiracy corrective action has not been taken against any of the Defendant SCPD officers nor has Plaintiffs Complaint been fully or fairly investigated such that this misconduct does not reoccur in the future.

121.    As a direct and proximate result of the SCPO's conspiracy and the SCPD and SC failing to properly document and investigate the claims of constitutional violations by Plaintiffs, Ferreira and Vitigliano have suffered grievous, significant, substantial and real injuries.

## FOURTH CAUSE OF ACTION (NEGLIGENT TRAINING, HIRING, SUPERVISION & RETENTION)

122.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

123.    Defendants SCPD and SC owe a duty of care to Plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of the misconduct of the SCPOs JOHN DOES #1- #6 and SCPO JANE DOE #1 - #2.

124.    Upon information and belief, Defendants SCPOs JOHN DOES #1 - #6 and SCPO JANE DOES #1 - #2 were and are incompetent and unfit for their positions.

125.    Upon information and belief, Defendant SCPD knew or should have known through exercise of reasonable diligence that SCPOs JOHN DOES #1- #6 and SCPO JANE DOES

#1 - #2 were potentially dangerous and that they had previously engaged in constitutionally violative misconduct.

126.    Upon information and belief, SC knew or should have known that the SCPD has a policy and practice of engaging in police brutality and constitutionally violative behavior.

127.    SC also knew or should have known that SCPD managerial officials have been condoning unlawful misconduct by SCPOs and/or have been taking affirmative steps to prevent the full and accurate reporting and disclosure of instances of violence and racial discrimination while simultaneously discouraging the honest, full and fair reporting of the SCPD's wrongful actions.

128.    Defendant SCPD's negligence in training, managing and supervising SCPO's from engaging in wrongful conduct and violating citizens' civil rights, and the SCPD's practice of retaining SCPOs who engage in wrongful conduct proximately caused Plaintiff's physical and mental injuries.

129.    Because of the SCPD's negligent hiring, managing and supervising of SCPOs and negligently or intentionally retaining any or all of Defendants SCPOs JOHN DOES #1- #6 and SCPO JANE DOE #1 - #2 of defendant officers, plaintiff has incurred and suffered damages described above.

## FIFTH CAUSE OF ACTION: ASSAULT

130.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

131.    AS detailed herein, Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 did intentionally charge Plaintiff Ferreira's vehicle with their guns drawn and pointed at

Plaintiffs thereby unnecessarily and unjustifiably placing Plaintiffs in fear of imminent harmful or offensive contact by Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1.

132.    By their actions, Defendants, SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1, did place Plaintiffs in harm and act offensively in contacting Plaintiffs with the use of physical force that had been objectively excessive under the circumstances.

133.    Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 did purposely scream and curse at Plaintiffs, utter racial slurs, threaten Plaintiffs physical safety and otherwise cause them to be in fear for their lives and physical well-being.

134.    Plaintiffs did not consent to Defendants misconduct in the form of threats and intimidation.

135.    A reasonable person would conclude that Defendants SCPO's conduct was offensive under the circumstances and wrongful as a matter of law.

136.     As a direct result of Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1's constitutionally violative behavior, including verbal threats and their use of racially derogative slurs and profanity, Plaintiffs suffered injury and harm, including physical and emotional pain and suffering.

## SIXTH CAUSE OF ACTION: BATTERY

137.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

138.    Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 did inflict harmful physical contact on Plaintiffs without their consent.

139.    Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 actions were taken with knowledge of their wrongfulness and were taken with the purpose of causing harm to Plaintiffs.

140.    As a result of Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 wrongful physical contact with Plaintiffs.

141.    Ferreira sustained physical injury in the form og bruising to this right cheek and jaw area, pain in his ribs from being shaken and thrown around by SCPO JOHN DOE #1. Ferreira received medical treatment for his physical injuries resulting from SCPO JOHN DOE #1's physical violence.

142.    Vitigliano suffered an injury on the right temple of his head as  result of SCPO JOHN DOES #3 throwing Vitigliano onto a pile of ice and later banging his head on the hood of the undercover police car. Vitigliano received medical care for his physical injuries resulting from SCPOs JOHN DOE #3's harmful contact.

143.    As a result of the improper and excessive physical force by SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 Plaintiffs did suffer physical and emotional harm and injury.

144.    Plaintiffs have suffered damages as a result of the physical contact by Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 to which they did not consent.

### SEVENTH CAUSE OF ACTION: FALSE IMPRISONMENT

145.    The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

146.    Following the unlawful pursuit, seizure and subsequent searches conducted by Defendants SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1, Plaintiffs were placed in handcuffs. Plaintiffs were not permitted to leave at their will or move about freely.

147.     Plaintiff Vitigliano was restrained against his will by SCPO JOHN DOES #3 and held down on the hood of the undercover vehicle while in handcuffs.

148.     Plaintiff Ferreira was restrained against his will by SCPO JOHN DOE #1 and placed in the back of the undercover vehicle while also being restrained in handcuffs.\Neither Vitigliano nor Ferreira consented to the unlawful detention by SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1.

149.     Both Plaintiffs were held against their will for a period of time without their consent.

150.     As a direct result of their wrongful detention Plaintiffs suffered injuries in the form of bruising from the handcuffs as well as physical and emotional trauma from SCPOs JOHN DOES #1- #5 and SCPO JANE DOE #1 use of excessive force and wrongful detainment.

151.     Plaintiffs suffered actual mental and physical injury as a result of their having been falsely imprisoned.

**EIGHTH CAUSE OF ACTION: INFLICTION OF EMOTIONAL DISTRESS**

152.     The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

153.     Plaintiffs were subjected to constitutionally violative misconduct by Defendants SCPOs JOHN DOES #1- #6 and SCPO JANE DOE #1.

154.     Said misconduct is detailed herein above.

155.     AS a result of the actions of Defendants SCPOs JOHN DOES #1- #6 and SCPO JANE DOES #1-#2 Plaintiffs have suffered emotional distress in the form of depression, headaches. Difficulty sleeping, and other yet unknown psychological trauma.

156. Plaintiff Ferreira has been and is currently under the case of a psychological doctor as a result of the events occurring on the night and morning of January 17018, 2019.

157. As a result of the extreme stress and physical trauma knowingly inflicted on Plaintiffs by SCPOs JOHN DOES #1- #6 and SCPO JANE DOES #1 - #2 Plaintiffs have suffered mental and emotional harm.

158. Plaintiffs have been damages by the constitutionally violative misconduct of Defendants SCPOs JOHN DOES #1- #6 and SCPO JANE DOES #1-#2 for which they are entitled to recover.

**NINTH CAUSE OF ACTION: RESPONDEAT SUPERIOR**

159. The preceding paragraphs 1-93 and subsection titles are incorporated herein by reference.

160. Defendants' SCPOs JOHN DOES #1- #6 and SCPOs JANE DOEs #1- #2 intentional tortious acts were undertaken within the scope of their employment by Defendant SCPD and in purported furtherance of Defendants SCPD's and SC's interests.

161. As a result of Defendants' SCPOs JOHN DOES #1- #6 and SCPOs JANE DOEs #1- #2 tortious conduct in the course of their employment and in furtherance of the business of Defendants SCPD and SC, Plaintiff was damaged.


**WHEREFORE**, Plaintiffs demand judgments against Defendants SCPOs JOHN DOES #1- #6 and SCPOs JANE DOES #1- #2, jointly and severally, as follows:

A. In favor of Plaintiffs in an amount to be determined by a jury for each of Plaintiff's causes of action;

B. Awarding Plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding Plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

**JURY DEMAND Plaintiffs demand a trial by jury**.

Respectfully submitted on April 8, 2019.

> **By:  /s/ Lee R. Pearlman**
> New York Bar No.1776905
>
> **Pearlman Advocates for Underrepresented Clients, PLLC**
> **54 Blydenburgh Road**
> **Centereach, New York 11720**
> **(516) 353-8481**
> **Email: leerpearlmanesq@aol.com**