UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------X

YAN SIMAS FERREIRA, individually, and
MARIO VITIGLIANO, individually,

                                Plaintiffs,


          -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT,
SUFFOLK COUNTY POLICE OFFICER DETECTIVE JESSE        19-cv-02101(GRB) (JMW)
ZUCKERMAN, in his individual and official capacity, SUFFOLK COUNTY
POLICE OFFICER DETECTIVE TIMOTHY DRAKE, in his individual and
official capacity, in his individual and official capacity, SUFFOLK COUNTY
POLICE OFFICER TIMOTHY J. GINAS, in his individual and official capacity,
SUFFOLK COUNTY POLICE OFFICER JEFFREY J. MOTT, in his individual
and official capacity, SUFFOLK COUNTY POLICE OFFICER CHRISTIAN
ADAMSON, in his individual and official capacity, SUFFOLK COUNTY
POLICE OFFICER SGT , CHRIS D. CARRANO, in his individual
and official capacity, SUFFOLK COUNTY POLICE OFFICER AMANDA
WITTERMAN, in her individual and official capacity, , SUFFOLK COUNTY
POLICE OFFICER AUDREY SCHOLTE, in her individual and official capacity,

                                Defendants.
-------------------------------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' IN LIMINE MOTION**


Dated: Centereach, New York
      January 24, 2022

                          Respectfully submitted
                          Lee R. Pearlman, Esq
                          Attorney for Plaintiffs
                          54 Blydenburgh Road
                          Centereach, New York 11720

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT                                          1-2

POINT I

GENERAL PRINCIPLES APPLICABLE TO IN LIMINE MOTIONS
MILITATE FOR THE DENIAL OF DEFENDANTS' MOTION.                3-7

POINT II

EVIDENCE OF DRAKE'S INTERACTION WITH RIVERA                   7-9
IS RELEVANT AND NON-PREJUDICIAL

POINT III

USE OF THE RIVERA DEPOSITION TRANSCRIPTS                      9-10

POINT IV

EVIDENCE OF THE COUNTY'S FAILURE TO TRAIN OFFICERS NOT
TO USE   RACIAL EPITHETS IS HIGHLY PROBATIVE, RELEVANT, IS NON-
PREJUDICIAL, AND WILL NOT CONFUSE THE JURY.                   10-15

CONCLUSION                                                    15

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law in opposition to Defendants' In Limine motion. It is respectfully submitted, that the Court should exercise its discretion to deny Defendant's motion, and to reserve all evidentiary rulings for the trial.

The incident in question was a police interaction between the defendant police officers and the plaintiffs in this case and one Angel Rivera, of Puerto Rican descent, ("Rivera") involving a police stop of an automobile and what ensued thereafter which occurred in the late hours of January 17, 2018 and the early hours of January 18, 2018. Plaintiff Ferreira, a black Hispanic, was the driver, Plaintiff Vitigliano was the front passenger, and Rivera was the rear passenger.[1] Plaintiff Ferreira alleges that he was punched in the face. Likewise Rivera alleges that he was assaulted and struck in the face. Most importantly the Plaintiffs were not arrested or even given traffic summonses. Instead they were subjected to excessive force under the flimsiest of pretexts.

What occurred to all three individuals was one continuing course of conduct and a common scheme and plan. The Defendant police officers acted in unison and manifested a common motive and intent to deprive the Plaintiffs and Rivera of their constitutional rights as alleged in plaintiffs' complaint. In such a setting, it is patently obvious that the testimony of the Plaintiffs and Rivera is direct evidence of the Defendants' common scheme and plan against them. Such testimony sets forth the events that occurred and the mutual intent of the defendant Police Officers in acting. This is especially the case since "Personal involvement of [each] defendant in the conduct that allegedly violates the plaintiff's constitutional rights

---

[1] Rivera has a separate suit concerning this single incident. Rivera v. County of Suffolk, et al, CV19-610 (AYS).

is generally a prerequisite for liability under a § 1983 claim." _Snider v. Dylag,_ 188 F.3d 51, 54 (2d Cir.1999); _Blyden v. Mancusi,_ 186 F.3d 252, 264 (2d Cir.1999) (citing _Wright v. Smith,_ 21 F.3d 496, 501 (2d Cir.1994)). The evidenced challenged as to Rivera, helps to prove such individual defendants' conduct in the common scheme and plan.

Moreover, the deposition of Rivera would only be used in the event that Rivera was unavailable to testify. It is anticipated that Rivera would be available to appear.

Plaintiff Vitigliano in his deposition testified that one of the Detectives stated to him "these fucking nigger spics," referring to Ferreira and Rivera. Plaintiffs rely on such statement as evidence of the Defendant's discriminatory intent and racial animus. It is also circumstantial evidence further establishing what occurred at the incident. The utterance of such racial epithets makes the physical attacks by Defendants upon Ferreira and Rivera more believable, as it provides the reason that this police attack occurred. This is further buttressed by the facts that in administrative proceedings the two Detectives admitted violations of police procedure, that they repeatedly yelled and cursed at the plaintiffs and Rivera, and their failure to write an incident report as required. Their failure to write such an incident report, provides circumstantial evidence that the Detectives were seeking to cover-up their wrongdoing and that the incident as set forth in the complaint occurred.

**POINT I**

**GENERAL PRINCIPLES APPLICABLE TO IN LIMINE MOTIONS MILITATE FOR THE DENIAL OF DEFENDANTS' MOTION.**

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting that although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir.1996); *National Union Fire Ins. Co. v. L.E. Myers Co. Group,* 937 F.Supp. 276, 283 (S.D.N.Y.1996).

Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *See Noble v. Sheahan,* 116 F.Supp.2d 966, 969 (N.D.Ill.2000); *see also Baxter Diagnostics, Inc. v. Novatek Medical, Inc.,* No. 94 Civ. 5520, 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying a motion *in limine* to preclude presentation of evidence regarding a potential punitive damages claim because the motion was too sweeping in scope to be considered prior to trial). Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See National Union Fire Ins. Co.,* 937 F.Supp. at 287 (citing *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D.Ill.1993)).

Exclusion of relevant information is "an extraordinary remedy that must be used sparingly." *George v. Celotex Corp.,* 914 F.2d 26, 31 (2d Cir.1990).

Furthermore, in considering a motion *in limine*, the court "may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 (quoting <u>United States v. Chan</u>, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002)). This is particularly so because "a court's ruling regarding a motion *in limine* `is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free — in the exercise of sound judicial discretion — to alter a previous in limine ruling.'" *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d at 476 (quoting <u>Palmieri v. Defaria</u>, 88 F.3d 136, 139 (2d Cir. 1996) (quoting <u>Luce v. United States</u>, 469 U.S. 38, 41-42, (1984))).

Federal Rule of Evidence 401 provides:

"Relevant evidence" means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. (emphasis in original).

It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall. Edward W. Cleary et al., McCormick on Evidence § 185, at 542-43.

Under Fed.R.Evid. 401, evidence is relevant if it has `any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' As noted in the Advisory Committee's Note

to Rule 401, `[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.' Because the rule makes evidence relevant `if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has *no* tendency to prove the fact.' 22 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure:* Evidence § 5166, at 74 n. 47 (1978) (emphasis added). Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant. *Id.* § 5166, at 74.

Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." <u>*United States v. Sriyuth,* 98 F.3d 739, 745 (3d Cir.1996)</u> (citations omitted).

*United States v. White*, 692 F.3d 235, (2d Cir. 2012) explains that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," Fed.R.Evid. 401, and, unless an exception applies, all "[r]elevant evidence is admissible," Fed.R.Evid. 402. Under this "very low standard," <u>*United States v. Al-Moayad,* 545 F.3d 139, 176 (2d Cir. 2008),</u> evidence that the other occupants of the vehicle were charged with possession of the firearm allegedly found in White's pocket was plainly relevant to the question of possession.

The fact that plaintiffs theory  may require a "chain of complex reasoning," White, 2009 U.S. Dist. LEXIS 113147, at *6, does not mean that it is not relevant. For "[t]he length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved ... does not

render the evidence irrelevant." _United States v. Ravich,_ 421 F.2d 1196, 1204 n. 10 (2d Cir. 1970) (Friendly, _J._)

Fed.R.Evid. 403 states that evidence, even if relevant, may be excluded `if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.' Thus evidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues. _United States v. Dennis,_ 625 F.2d 782, 797 (8th Cir.1980).... Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative. _United States v. Terzado-Madruga,_ 897 F.2d 1099, 1117 (11th Cir.1990). The balance under the rule should be struck in favor of admissibility. _Id.; Dennis,_ 625 F.2d at 797 (8th Cir.1980). Finally, in determining the probative value of evidence under Rule 403, the Court ` must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case.' _United States v. Herman,_ 589 F.2d 1191, 1198 (3d Cir.1978), _cert. denied,_ 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).

Importantly, `[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." _Petruzzi's IGA Supermarkets,_ 998 F.2d at 1241 (quoting _Daubert v. Merrell Dow Pharmaceuticals, Inc.,_ ___ U.S. ___, ___, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993)). Given the cautious approach to Rule 403 exclusions at the pretrial stage, _see Petruzzi's IGA Supermarkets,_ 998 F.2d at 1240; _In Re Paoli R.R. Yard PCB Litig.,_ 916 F.2d 829, 859-60 (3d Cir.1990), _cert. denied,_ 499 U.S. 961, 111 S.Ct.

1584, 113 L.Ed.2d 649 (1991), it is respectfully submitted that it would be an abuse of discretion to exclude the evidence under Rule 403.

At bar, the factual chain of events, as set forth above, needs to be determined based upon the totality of evidence affording the trial court the opportunity to hear for itself how each piece of evidence is a tile in the mosaic to be presented by plaintiffs to prove their case. That should in all likelihood be best determined during trial.


## POINT II

### EVIDENCE OF DRAKE'S INTERACTION WITH RIVERA
### IS RELEVANT AND NON-PREJUDICIAL

A plaintiff may " present direct or circumstantial evidence that reasonably tends to prove that the [defendants] `had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" (quoting *Edward J. Sweeney & Sons v. Texaco, Inc.,* 637 F.2d 105, 111 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981)); *see also H.L. Moore Drug Exchange v. Eli Lilly & Co.,* 662 F.2d 935, 941 (2d Cir.1981), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).


In accessing such evidence, it is evident that the question of what weight should be assigned to competing permissible inferences of joint action or a common scheme or plan remains within the province of the fact-finder at a trial. Apex Oil Co. v. DiMauro, 822 F. 2d 246 (2nd Circuit 1987).

The evidence regarding the totality of what occurred at the scene in question, tends to establish the common intent and motive of the Defendant Police Officers. The fact that another passenger in the same vehicle was assaulted tends to establish that it is more likely

that occurred to one passenger occurred to another. This is especially the case since Detective Zuckerman and Drake were partners and both admitted in administrative proceeding to their common violation of police procedures at the scene and as to their obligations to fully report and document the incident.

The Defendants' argument as to potential prejudice is without merit. A jury's passions may well be aroused in the evidence of Plaintiff Ferreira having been assaulted. Accordingly, the evidence as to Rivera having been similarly assaulted would not introduce new potential passions to the jury. Rather, the issues reflect the similar circumstances occurring at the exact same time, by this team of police officers.

Defendants erroneously suggests that the disputed evidence violates Rules 404 (a) and 404 (b) of the Federal Rules of Evidence as "propensity" evidence. Rather it is offered to prove intent and common scheme and plan. Moreover, it is respectfully submitted that the dispute at issue does not fall within the text of the Rules as the evidence does not show a prior act of the same person.

The Supreme Court has noted that Federal Rule of Evidence 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." _Huddleston v. United States,_ 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). However, in _Huddleston,_ the Court was careful to point out that "[e]extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." _Id._

"The Second Circuit evaluates Rule 404(b) evidence under an `inclusionary approach' and allows evidence `for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia,* 291 F.3d 127, 136 (2d Cir.2002) (quoting *Pitre,* 960 F.2d at 1118). In reviewing whether a district court properly admitted evidence under Rule 404(b), we consider whether: "(1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *Id.* At 136 (citing *Huddleston,* 485 U.S. at 691-92, 108 S.Ct. 1496).See, *United States v. Brand*, 467 F.3d 179, 196, (2d Cir.2006).

## POINT III
## USE OF THE RIVERA DEPOSITION TRANSCRIPTS

The Plaintiffs would only use the Deposition transcripts of Rivera in full compliance with Federal Rule of Civil Procedure 32, which provides as follows:

"(a) **Using Depositions**.
(1) *In General.* At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

(2) *Impeachment and Other Uses.* Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence.
(3) *Deposition of Party, Agent, or Designee.* An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).
(4) *Unavailable Witness.* A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:

(A) that the witness is dead;

(B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

(C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

(D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

(E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

(5) *Limitations on Use.*
(A) *Deposition Taken on Short Notice.* A deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and this motion was still pending when the deposition was taken.
(B) *Unavailable Deponent; Party Could Not Obtain an Attorney.* A deposition taken without leave of court under the unavailability provision of Rule 30(a)(2)(A)(iii) must not be used against a party who shows that, when served with the notice, it could not, despite diligent efforts, obtain an attorney to represent it at the deposition.
(6) *Using Part of a Deposition.* If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts.
(7) *Substituting a Party.* Substituting a party under Rule 25 does not affect the right to use a deposition previously taken.
(8) *Deposition Taken in an Earlier Action.* A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence."

Plaintiff would only seek to use the deposition transcripts of Rivera in the unlikely event he were unavailable to appear at trial. The Defendants' counsel was present at the deposition and in fact conducted it. She could therefore not credibly argue prejudice or lack of notice.

## POINT IV

**EVIDENCE OF THE COUNTY'S FAILURE TO TRAIN OFFICERS NOT TO USE RACIAL EPITHETS IS HIGHLY PROBATIVE, RELEVANT, IS NON-PREJUDICIAL, AND WILL NOT CONFUSE THE JURY.**

Plaintiff Vitigliano specifically testified and his deposition that he heard one or more of the defendants utter the words "these fucking Nigger Spics." All of the Police Officers that were on the scene specifically testified at their depositions that they had training on the subjects of community relations and dealing with minorities. They each testified that such training occurred at the police academy prior to their commencing their duties, with updated training each year that they were on the police force. They also all testified that they were never trained or told that the use of the terms "Nigger" and "Spics" was prohibited.

Moreover, such testimony reflects on the state of mind of the Defendants on the scene.

A municipality can be liable under § 1983 for inadequate training of its employees. *City Of Canton Ohio v Harris*, 489 US 378, 388 (1989). In *City of Canton*, the Court held that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. 489 US at 388. Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. 489 US at 388.

Indeed, it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. 489 US at 390.

In Monell v. Dep't of Social Services, 436 U.S. 658 (1978), the Supreme Court held that a municipal government may be held liable as a "person" under 42 U.S.C. § 1983 for the

constitutional violations caused by its employees. A plaintiff must demonstrate that "the violation of . . . constitutional rights resulted from a municipal custom or policy." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

The Monell Court explicitly rejected respondeat superior liability for purposes of § 1983, and, consequently, "constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights." Amnesty America v. Town of West Hartford, 361 F.3d 113, 125 (2d Cir. 2004). However, "[t]his does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation." Vann, 72 F.3d at 1049. Rather, liability can attach either when an unofficial custom or practice becomes "so permanent and well settled as to constitute official municipal policy," Monell, 436 U.S. at 691 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970) (internal quotation marks omitted)), or when "a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy." Amnesty America, 361 F.3d at 125.

After Monell, municipalities can be held liable in cases where they demonstrate a manifest failure to train, supervise or discipline their employees. See, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985) (liability for inadequate training would require evidence of a "conscious choice . . . [of] a training program which would prove inadequate"); Amnesty America, 361 F.3d at 125 (city can be held liable where it is "aware that its policy may be unconstitutionally applied by inadequately trained employees but . . . consciously chooses not to train them"); Vann, 72 F.3d at 1049 (liability for failure to monitor employee can

attach when "the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference"[2]); Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986) (city can be liable for failure to supervise employees when deliberately indifferent to their use of excessive force); Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980) (municipality may be held liable for failing to discipline subordinates when doing so demonstrates deliberate indifference to public safety). In such cases, "[o]nly where a failure ... reflects a deliberate or conscious choice by a municipality ... can a city be liable for such a failure under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (internal quotation marks omitted); see Amnesty America, 361 F.3d at 126 ("[T]he inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself.").

The use of racial epithets at bar provides evidence of defendants' intent to unconstitutionally apply racial profiling against the plaintiffs and provides corroborative evidence that the Defendants' use of excessive force was motivated by their racial animus against the plaintiffs and Rivera.

Accordingly, Defendants' reliance upon *Jackson ex rel. Jackson v. Suffolk Cty.*, 87 F. Supp. 3d 386, 402 (E.D.N.Y. 2015) and *Keyes v. City of Albany,* 594 F.Supp. 1147, 1155 (N.D.N.Y. 1984) statement about the use of vile and abusive language not forming the basis for a section 1983 claim, is misplaced. Those cases did not address the use of racial epithets demonstrating defendants' intent to violate Plaintiffs' constitutional rights. An equal

---

[2] This is also a factual issue at bar, based upon the County's extensive history and the criminal convictions of the former District Attorney and former Police Chief in incidents involving use of excessive force and its cover-up.

protection deprivation will be found when racial animus inspires police misconduct. *See Harris v. Harvey,* 605 F.2d 330, 338 (7th Cir.1979), *cert. denied,* 445 U.S. 938, 100 S.Ct. 1331, 63 L.Ed.2d 772 (1980). Moreover, Plaintiffs are not seeking to impose liability merely based upon the utterance of such words. Rather the use of such testimony provides the context for the defendants' violation of plaintiffs' constitutional rights and their motivation.

Finally, *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992), relied upon by defendants, is not a bar to plaintiffs' claims. In *Walker*, the Second Circuit, permitted the claims of custom and practice to proceed.

A plaintiff may satisfy the "policy, custom or practice" requirement in one of four ways. See *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality, see *Monell*, 436 U.S. at 690; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question, see *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986) (plurality opinion); *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992); (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials, see *Monell,* 436 U.S. at 690-91; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. See *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Against such complex legal issues and the factual issues presented, it is respectfully submitted that the Court should defer its final decision on the admissibility of evidence, until trial.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that Defendants' In Limine motion be denied in all respects.

Respectfully submitted,
Lee R. Pearlman, Esq.

By *Lee R. Pearlman*

Lee R. Pearlman
Attorney for Plaintiffs
54 Blydenburgh Road
Centereach, New York 11720
(T) 516 353 8481
Email: leerpearlmanesq@aol.com